[No. 27814.   Department Two.   March 21, 1940.]

THE CITY OF SPOKANE, *Appellant,* v. MARY E. COON, *Respondent.*[1]

*G. M. Ferris, B. A. Farley,* and *Paul F. Schiffner,* for appellant.

*Tustin & Chandler* and *Floyd A. Futter,* for respondent.

[1]Reported in 100 P. (2d) 36.

BEALS, J.—The Spokane city council, September 10, 1923, passed ordinance No. C3157, regulating the location and maintenance of hospitals and requiring a permit therefor. Section 2 of the ordinance reads as follows:

"No hospital shall be established or maintained in the city of Spokane without a written permit therefor first having been obtained from the health officer of said city."

Section 3 provides for the application for a permit, the second paragraph of the section reading as follows:

"No permit shall be granted by the health officer for the maintenance of any hospital in a building or premises not conforming to the standards fixed and specified by the building ordinances of the city for a hospital, and before any such permit is granted the applicant therefor must present to the health officer a certificate of the building inspector certifying that the building to be occupied by the proposed hospital conforms to the building ordinances."

By § 5, "every hospital established or maintained in violation of the provisions of this ordinance" was declared to be a public nuisance, and subject to abatement as such.

By § 6, the violation of any provision of the ordinance was declared a misdemeanor, punishable by fine or imprisonment.

Ordinance No. C1891 was passed by the city council February 23, 1915, and is known as the building code. The first paragraph of § 40 of this ordinance reads as follows:

"Every building hereafter erected and every building now erected and hereafter to be used for hospitals, asylums, school house or sanitarium purposes for human beings, shall be of class A, B, C, D, or E, if over two stories in height."

This section contains other building regulations governing the construction of buildings to be used for hospitals, and also the following paragraph:

"No frame building not now used shall be used for a hospital, asylum or sanitarium for human beings."

It will be noted that one applying under the hospital ordinance for a permit to operate a hospital must present to the city authorities a certificate from the building inspector, certifying that the building proposed to be used as a hospital complies with the building code. In the absence of such a certificate, no permit will be issued. Under the building code, the use of a structure occupied as a hospital prior to the enactment of that ordinance may continue, although the building does not meet the requirements of the code, while a building thereafter constructed, or thereafter for the first time used as a hospital, must comply with the building regulations. The building code, then, contemplates two classes of structures which may be used as hospitals: First, those which were so used prior to the enactment of the ordinance; and second, those constructed or put to use as hospitals thereafter.

The defendant, Mary E. Coon, an osteopathic physician, September 1, 1936, commenced to conduct a private hospital in a three-story frame residence, located at 2136 West Riverside avenue, Spokane. Defendant attempted to obtain a permit authorizing her to operate a hospital, but as the building did not meet the requirements of the building ordinance, she was unable to secure a certificate from the building inspector and made no further attempt to procure a permit to operate the hospital, conducting the same without a permit for approximately three years. It appears, however, that defendant made certain installations required by the fire department.

During the month of July, 1939, defendant was arrested, charged with operating a hospital without a permit, and, having been convicted before the municipal court of the city, appealed to the superior court. She was found guilty by the jury, whereupon the trial court granted defendant's motion to set aside the verdict, upon the ground that the city ordinance under which defendant had been convicted was unconstitutional. Judgment having been entered dismissing the proceeding, the city has appealed therefrom to this court.

Error is assigned upon the granting of respondent's motion to set aside the verdict and upon the entry of judgment of dismissal.

During the trial, respondent relied solely upon her contention that the ordinance pursuant to which she was prosecuted was unconstitutional and void. The right of appellant city, under its police power, to regulate private hospitals was not questioned. Respondent does not contend that she was not conducting a hospital, as defined by the ordinance, and she, of course, admits that she was so conducting the same without a permit.

It is, of course, the general rule that every presumption is in favor of the constitutionality of a law or ordinance. *Shea v. Olson,* 185 Wash. 143, 53 P. (2d) 615, 111 A. L. R. 998. As we said in the case of *McDermott v. State,* 197 Wash. 79, 84 P. (2d) 372,

"Every reasonable presumption must be indulged in favor of the constitutionality of this statute, and the burden rests upon appellant to establish clearly its invalidity."

Under Art. XI, § 11, of our state constitution, cities of the first class enjoy the same police power within their borders as does the state itself. *Bungalow Amusement Co. v. Seattle,* 148 Wash. 485, 269 Pac. 1043,

60 A. L. R. 166; *Brennan v. Seattle,* 151 Wash. 665, 276 Pac. 886.

The question to be here determined is whether ordinance No. C3157 discriminates against respondent, in violation of the fourteenth amendment to the constitution of the United States, or in violation of Art. I, § 12, of the constitution of the state of Washington. Respondent argues that the ordinance does discriminate against respondent, because § 40 of ordinance No. C1891, the building code, is not retroactive, but permits the continued operation of buildings used as hospitals before the effective date of the ordinance last mentioned. By its terms, the building code, in the paragraph above quoted, permits the use as hospitals of buildings devoted to that use prior to the effective date of the ordinance, even though such buildings fail to comply with the provisions of the ordinance, and could not be first used as hospitals after the ordinance became effective.

Appellant argues that the ordinance creates two classes of hospitals: First, those in operation prior to the enactment of the ordinance; and second, those established thereafter, arguing that the ordinance applies equally and fairly within each class, without discrimination.

The supreme court of the United States, in the case of *Lindsley v. Natural Carbonic Gas Co.,* 220 U. S. 61, 55 L. Ed. 369, 31 S. Ct. 337, Ann. Cas. 1912C, 160, said:

"1. The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice

it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary."

In the case of *Seattle v. Gervasi*, 144 Wash. 429, 258 Pac. 328, in affirming a conviction of one charged with the offense of selling groceries on Sunday, in violation of a city ordinance, this court said:

"We have held times innumerable that, where all of a class are included under any regulatory or prohibitory law, the objection as to discrimination, denial of equal privileges or immunities, or the taking of property without due process of law, based upon the fact that other businesses are not prohibited, is not sound where the law operates equally upon all persons similarly situated. Also, that legislatures may be cognizant of conditions and things not commonly cognized by courts."

The cases of *State ex rel. Scott v. Superior Court,* 173 Wash. 547, 24 P. (2d) 87, and *Garretson Co. v. Robinson,* 178 Wash. 601, 35 P. (2d) 504, approved a similar rule.

In the early case of *Fox v. Territory,* 2 Wash. Ter. 297, 5 Pac. 603, it appeared that the defendant was convicted of the offense of practicing medicine contrary to the existing code. On appeal, the defendant contended that the law under which he had been convicted was unconstitutional, in that it prescribed a standard of qualification which he was required to meet, while relaxing the standard in favor of those who were practicing medicine in the territory at the time of the enactment of the statute. While recognizing that the law fixed a different standard for the two classes, it was held that the defendant suffered no deprivation of any

right secured by the constitution of the United States. In the course of the opinion, the court, speaking through Judge Turner, said:

"Another objection to the law urged by counsel is, that it discriminates between persons of equal learning and skill, by permitting that person to practice medicine and surgery who was so engaged the day before the passage of the law, while it denies the privilege to the person who may seek to engage in the practice the day after, or at any time after, the passage of the law. It appears to be an answer to this objection, to say that the law does not deny the privilege of practicing medicine and surgery to any one. Any citizen of the Territory may qualify himself in the manner pointed out by the law, and thereafter may lawfully engage in the practice of medicine and surgery.

"The Legislature, for good and valid reasons, has exempted a particular class from the necessity of having this qualification; but this action does not entitle persons of another class to claim the exemption as a legal right to themselves, under the 14th Amendment, or under any other clause of the Federal Constitution."

The case of *State v. Fraternal Knights & Ladies,* 35 Wash. 338, 77 Pac. 500, is decidedly in point. The state instituted the proceeding for the purpose of enjoining the defendant from carrying on the business of fraternal insurance while charging assessments or premiums in amounts less than the rates required to be paid by chapter 174, Laws of 1901, p. 356. The trial court sustained a demurrer to the complaint and entered judgment dismissing the action, from which the state appealed. Before this court, respondent, *inter alia,* contended that the statute relied upon by the state attempted to make an arbitrary and unreasonable classification of insurance corporations, and granted unequal privileges and immunities, in violation of Art. I, § 12, of the state constitution. It appeared that the statute above referred to exempted from the operation thereof

corporations then in existence and doing business, but applied the rate schedule referred to in the statute to corporations thereafter created or commencing to operate in this state. This court noted that all corporations formed or commencing to do business after the act were placed in one class, without discrimination between them. It was held that the legislative classification was neither unreasonable nor arbitrary,

". . . and such reasonable classifications are held to be not violative of the constitutional principles invoked here, where all persons who come within the operation of the law are affected alike, even though they may constitute a class. Equal protection of the laws, given by the constitution, requires that the law shall have equality of operation, but that does not mean equality of operation on persons merely as such, but on persons according to their relations."

It was held that the legislative classification which the court was considering was not in conflict with the constitution, and the judgment of the superior court was reversed, with instructions to overrule the demurrer. The case was cited with approval in the case of *Laughney v. Maybury,* 145 Wash. 146, 259 Pac. 17, 54 A. L. R. 393.

In the case of *Manos v. Seattle,* 146 Wash. 210, 262 Pac. 965, it appeared that the plaintiff had been refused a license for the maintenance of a dance hall on land which he owned, located within five hundred feet of the property line of a city park. From a judgment in favor of the defendants, plaintiff appealed, contending, among other things, that the city ordinance which forbade the maintenance of a dance hall within five hundred feet of any public park was discriminatory and void. The ordinance permitted the continuous operation of dance halls which were lawfully in operation at the effective date of the ordinance, and also permitted dances within the prohibited area when con-

ducted under the auspices of certain named boards. Concerning this phase of the case, this court said:

"But it is not our opinion that either of these exceptions renders the ordinances invalid. The first was obviously intended as a relief for those actually engaged in the business the ordinances prohibit. They had investments therein, made when the business was lawful, and to cut them off arbitrarily could result in serious monetary losses. It must be remembered, furthermore, that the ordinances do not permit the perpetual existence of dance halls within the prescribed area. In time, more or less prolonged, all will be eliminated. It seems clear, therefore, that those actually engaged in the forbidden businesses stand on a different plane than do those who desire to commence the business anew. The parties are not in the same situation. There is thus a distinction as to class, and where there is such a distinction, the law-making body may classify, and may grant privileges to one class which it denies to another. It is needless to collect the cases on the general principle involved. The principle is uniformly recognized, although it may be hard in some instances to recognize a difference between the cases where it is held that the facts do and do not warrant an application of the principle."

The judgment against the plaintiff was affirmed.

Respondent seeks to distinguish the case last referred to, observing that this court, in its opinion, called attention to the fact that public dance halls had long been recognized as an influence detrimental to the public welfare. In this connection, respondent relies upon the opinion of this court in the later case of *Manos v. Seattle,* 173 Wash. 662, 24 P. (2d) 91, in which a decree in favor of the plaintiff, permanently enjoining a city from interfering in the operation of a skating rink, was affirmed. In the course of the opinion, we referred to the case of *Manos v. Seattle, supra,* calling attention to the difference between a dance hall and a skating rink and observing that the latter is an amusement which

cannot be entirely prohibited. Respondent argues that, in deciding the earlier of the two *Manos* cases, this court based its decision upon the ground that the operation of a dance hall was an objectionable business which could be prohibited, and that the opinion of this court is not in point upon the question here presented. We cannot follow respondent's argument to the extent of holding that the earlier *Manos* case is not here in point, although the distinction pointed out by respondent is entitled to consideration.

Respondent also cites the case of *Bungalow Amusement Co. v. Seattle, supra,* in which this court approved the doctrine that there are certain businesses, having specific reference to the operation of a dance hall, which are subject to regulation under the police power, "to the extent of even entirely prohibiting them." Dance halls and resorts where intoxicating liquor is sold undoubtedly differ greatly from hospitals. At the same time, laws and ordinances controlling the kinds of buildings in which hospitals may be operated are universally upheld as necessary to the safety of the public. Such regulations are as important in their field as are ordinances controlling dance halls in another.

The supreme court of the United States, in the case of *Williams v. Walsh,* 222 U. S. 415, 56 L. Ed. 253, 32 S. Ct. 137, held valid a statute of Kansas making it an offense to sell or deliver black powder for use in any coal mine, save in the original sealed packages, while exempting from the operation of the law existing contracts. It was contended that the act was discriminatory and denied to the plaintiff the equal protection of the laws. In the course of the opinion, the court said:

"The purpose of the statute is to provide for the safety of coal mining operations, and if it may be said that whatever danger can come from packages of powder will come from them regardless of the date of the contract under which they may be delivered, there

are nevertheless other considerations to be taken into account. The statute is criminal. A retrospective operation of it was to be avoided, might indeed be illegal. At any rate, it was a matter properly to be considered by the legislature in distinguishing between contracts made before the passage of the law and those made after its passage. The former might not be numerous, their evil would be temporary; and certainly legislation which makes acts criminal which are done after they are forbidden, and assigns no penalties to acts done in pursuance of obligations legally incurred, is not arbitrary classification. It is not necessary to do more than repeat what we have said many times, that a classification which is not arbitrary is not repugnant to the Constitution of the United States. We may add that 'the Fourteenth Amendment does not forbid statutes and statutory changes to have a beginning, and thus discriminate between the rights of an earlier and later time.' *Sperry & Hutchinson Co. v. Rhodes*, 220 U. S. 502, 505."

Respondent argues that, in so far as the case at bar is concerned, the application of the ordinance operates only to guard against a fire hazard, and that the classification between hospitals established before, and those established after, the effective date of the ordinance, does not reasonably aid in attaining the purpose of the law. It would seem that a law which reduces or prevents the increase of the number of fire hazards does tend toward the safety of the public. Certainly the number of fire hazards, considering the ordinance from a standpoint of that particular danger, would probably be increased by a holding that the ordinance is unconstitutional. Neither do we agree with respondent's contention that, as to the facts of the case at bar, the ordinance operates only as a measure to guard against fire hazards.

Respondent cites several of our decisions: *In re Camp*, 38 Wash. 393, 80 Pac. 547, in which an ordinance prohibiting the peddling of farm products within cer-

tain limits, but exempting the peddling of produce grown by the peddler, was held unconstitutional; *State v. Robinson Co.,* 84 Wash. 246, 146 Pac. 628, holding void a statute regulating the sale of stock food, but exempting sales made by flour mills; *Sherman Clay & Co. v. Brown,* 131 Wash. 679, 231 Pac. 166, in which an ordinance regulating purchase and sale of goods by second hand dealers, but excepting from its operation dealers in stoves, etc., was held void as in violation of Art. I, § 12, of the state constitution, prohibiting the granting of special privileges and immunities; *Kaufman v. West,* 133 Wash. 192, 233 Pac. 321, in which an ordinance prohibiting occupants of apartment houses from parking automobiles on the side of the street opposite the apartment house, but not prohibiting such parking by other citizens, was held void; *Verino v. Hickey,* 135 Wash. 71, 237 Pac. 5, holding void a statute which provides that exemptions allowed against certain creditors should not be effective against claims for wages.

The cases cited in the foregoing paragraph are based upon states of facts very different from that here presented, and are, for that reason, of no controlling force.

Respondent specially relies upon two cases, which we shall now discuss.

In *Nicholls v. Spokane Public School Dist. No. 81,* 195 Wash. 310, 80 P. (2d) 833, 82 P. (2d) 857, it was held, at the suit of a school district, that chapter 164, Laws of 1937, p. 619 (Rem. Rev. Stat. (Sup.), § 10322-11 [P. C. § 5537-4a]), which provided, among other things, that no fuel should be used in any building operated by the state or any municipal corporation, unless the fuel should have been mined or produced within the state of Washington, was unconstitutional. The act contained a proviso to the effect that any building which, at the time of the passage of the act, was using fuel produced

without the state of Washington, should not be required to comply with the law, save under certain specified circumstances. This court held that the law, at least in so far as it operated upon the question presented in the case cited, was special and not general, and was unconstitutional, as in violation of Art. II, § 28, subd. 15, of the state constitution, prohibiting the enactment of special legislation in certain cases, including "15. Providing for the management of common schools." The case is not controlling here, the facts presenting an entirely different legal question.

In the case of *State ex rel. Bacich v. Huse*, 187 Wash. 75, 59 P. (2d) 1101, it was held that a law prohibiting all persons from fishing for salmon by means of gill nets, save that persons who held licenses to fish in the manner indicated during the years 1932 and 1933 might continue fishing, was bad. The case is not controlling, as the law then under attack absolutely forbade the use of gill nets, save by persons who had enjoyed licenses to use such nets during two specified years.

In the case at bar, the ordinance of which respondent complains does not forbid her to operate a hospital, but merely requires that, in the conduct of her hospital, she use a building of a certain character. The ordinance does not purport to prevent anyone from engaging in the business of conducting a hospital. It does, of course, place upon persons who, for the first time, engage in that business from and after the effective date of the building ordinance, an additional burden, but under the authorities that fact does not require a holding that the ordinance is void as discriminatory.

Appellant cites several authorities in which property put to nonconforming uses has been allowed to continue to be so used under zoning ordinances, although the ordinances contained prohibitions against the introduction of similar businesses in restricted districts,

which prohibitions were held lawful. In some of the authorities cited, there is language which strongly supports appellant's position here, but as zoning ordinances are held valid under a somewhat different theory, we shall not discuss the rules laid down in cases involving such legislation.

We are convinced that, under the decisions of this court and of the supreme court of the United States, above referred to, it must be held that the ordinance of which respondent complains is not void as to respondent, but that, on the contrary, the same, in so far as the questions here presented are concerned, is a valid and binding legislative enactment of the city of Spokane.

The trial court erred in setting aside the verdict of the jury and in dismissing the action.

The judgment appealed from is accordingly reversed, with instructions to proceed in accordance with the views herein expressed.

BLAKE, C. J., JEFFERS, ROBINSON, and STEINERT, JJ., concur.