513 P.2d 1017

**KESLER & SONS CONSTRUCTION COMPANY, Plaintiff and Appellant,**

v.

**UTAH STATE DIVISION OF HEALTH et al., Defendants and Respondents.**

No. 12948.

Supreme Court of Utah.

Sept. 4, 1973.

Stephen G. Morgan and Grant S. Kesler, of Morgan, Scalley, Lunt & Kesler, Salt Lake City, for plaintiff and appellant.

Vernon B. Romney, Atty. Gen., Verl R. Topham, G. Blaine Davis,. Asst. Attys. Gen., Carl J. Nemelka, Salt Lake County Atty., Lothaire R. Rich, Deputy Salt Lake County Atty., Salt Lake City, for defendants and respondents.

CROCKETT, Justice:

Kesler & Sons, plumbing contractors, sued the State Division of Health to enjoin the enforcement of a regulation which required the installation of a certain type of back-flow prevention device in installing sprinkler systems, contending that it is invalid and unconstitutional. After a trial, the trial court refused to so rule and plaintiff appeals.

Section 26–15–4(21), U.C.A.1953, authorizes the State Department of Health:

a. To establish and enforce minimum sanitary standards for:

(a) The collection, treatment and distribution of drinking water including . . . distribution systems . . . and extension of such systems.

(b) The quality of water supplies to the public . . .

Acting pursuant to that statute the Department in 1969 promulgated a Plumbing Code.[1] Section 2 of Chapter 11 of that code is under attack here. It requires that all new sprinkler systems installations include what is called a "vacuum breaker" device whose purpose is to prevent backflow of water into the water system. Two methods are described. First, if the ground is level, the breaker can be attached near the valve and six inches above the level of the highest sprinkler head. Where the ground slopes up from the main line this method would not be practical and the second method must be used. That requires the running of the main line of the sprinkler system up to the highest sprinkler head, attaching the breaker, and then running the line back to the valve area. The

---

1. That same year the Legislature changed the structure of the Social Service System so that the State Board of Health became responsible for formulating policy, with the State Division of Health to enforce regulations and to do all else in the health field except make policy. (See Secs. 26–15–1 to 26–15–5, U.C.A.1953.)

cost increases proportional to the distance necessary to run this line, and particularly the vertical distance between the highest sprinkler head and the street connection. The evidence is that the added cost in the average system would be about $125, and that where there is a steep slope it would run as high as $1000 to $1200, or in some instances even $2000. The court finding was that an average cost would be about $125, and in some instances up to $1000.

Prefatory to turning attention to what we regard as the controlling issue in this case, we comment briefly in agreement with the contention of the defendant on two of the disputed issues. First, we do not accept the argument that it is discriminatory to impose a regulation which affects only later installations, and exempts previous ones from compliance. If a regulation is one which is reasonable and justified to improve sanitation, or for any other legitimate purpose, it can be prospective only in effect. There must be a starting place somewhere.[2] Second, and speaking generally, we do not believe a statute authorizing the Department of Health to promulgate regulations which are reasonable and purposed to protect the public health is an improper delegation of legislative power.[3]

The issue which we stated above to be the controlling one is the contention that the regulation is so burdensome, expensive and unnecessary in comparison to any possible benefit that it should be deemed an arbitrary and unreasonable infringement on the right to use property, and therefore in effect a deprivation of property without due process of law.

We are cognizant of the duties and the prerogatives conferred upon the Division of Health by the statutes referred to above; and that in fulfilling those responsibilities it should be allowed considerable latitude of discretion.[4] Notwithstanding this, its powers and prerogatives cannot be without some limitation. We think it pertinent to observe that it is easy enough for men who dedicate their efforts in a specialized field for a long period of time, with their attentions finely focused on its niceties, to sometimes become unduly obsessed with reaching toward perfection, and to lose sight of reasonableness and practicalities in operation. This can result in failure to evaluate the trouble and expense imposed, and the rights of individu-

2. See Williams v. Walsh, 222 U.S. 415, 32 S.Ct. 137, 56 L.Ed. 253; and see also Bigler v. Greenwood, et al., 123 Utah 60, 254 P.2d 843, citing Hutchinson v. City of Valdosta, 227 U.S. 303, 33 S.Ct. 290, 57 L.Ed. 520.

3. That the power to make rules and regulations may be so delegated so long as they are limited within the authority and for the proper purpose see Utah Mfgrs. Assn. v. Stewart, 82 Utah 198, 23 P.2d 229.

4. See e. g., Goodrich v. Public Serv. Comm., 114 Utah 296, 198 P.2d 975.

als to enjoy freedom in the use of their property, as compared to the minimal harm to be guarded against and the advantage to be gained. Whether from this cause, or from any other cause or motivation, it is a fact of life that administrative actions sometimes can become so unreasonable as to demand redress.

▆ This can be illustrated by postulating an extreme: theoretically one can visualize rules progressing in unreasonableness and severity right up to such a thing as allowing no one to have water except through a high-pressure sterilizing cylinder, with life imprisonment or death as a penalty for violating the rule. This ridiculosity is expressed to make plain that there must be some point at which even a nonexpert should be permitted to have his say, and to have his right protected from despotic action; and where under our system the resort is to the court for relief.[5] This should not seem incongruous or surprising since in the case of impasse it is the court that would be called upon to enforce the regulation.[6] We think the point where the court should refuse enforcement of such an administrative regulation is in accord with the usually applied rule of review and control of administrative actions: where it so clearly transgresses beyond any

reasonable justification in relation to its purpose that it should be deemed capricious and arbitrary.

With these principles in mind we turn to the facts about the asserted danger and the proposed remedy. For danger from backflow to exist, several factors would have to be present in a causal sequence. First, there must be a break, or other outage of water, in the water main serving the premises, so that there is no pressure from the main line to oppose the free flow of water from the sprinkler heads, and thus it would flow freely (or be sucked) back into the system. Next, there must be an accumulation of a puddle or other body of water so positioned that it can get into a sprinkler head. Third, a sprinkler head must be below the ground level, or at least below the level of the accumulated water just described. There must also be pathogenic bacteria or other harmful pollutants in the water. The hypothesis of danger is that if and when all of the foregoing conditions synchronize so that if harmful pollutants got into the water system, they might be of sufficient concentration to cause someone to become ill.

Without any attempt to follow the exact mathematics, it can be said generally that the expert testimony is to the effect that

---

5. See Kent Club v. Toronto, 6 Utah 2d 67, 305 P.2d 870.

6. That one need not violate law to test validity of statute or rule see Mayers v. Bronson, 100 Utah 279, 114 P.2d 213; Clayton v. Bennett, 5 Utah 2d 152, 298 P.2d 531.

the probabilities against all of these things occurring in any given sprinkler system in the causal sequence necessary to cause injury run into thousands against one; and it is obviously much more so against any harmful result to any one person or household. It seems beyond question that anyone is far more likely to be harmed by other ordinary hazards of living than by the danger the rule of concern here is designed to eliminate.

The foregoing impresses us as demonstrating the soundness and persuasiveness of plaintiff's argument that the extraordinary trouble and expense imposed by this regulation is entirely beyond reason when it is compared to the extremely rare possibility of harm that it is intended to guard against; and particularly so because it would seem that, whatever minimal danger may exist could be greatly minimized by simpler and less expensive precautions in the construction and operation of such systems.

On the basis of what has been said herein, it is our conclusion that the validity of the rule in question is vulnerable to the attack made upon it: that it is arbitrary and unreasonable, and that it therefore should not be enforced. No costs awarded.

CALLISTER, C. J., and ELLETT and TUCKETT, JJ., concur.

HENRIOD, J., does not participate herein.