12 Cal.App.4th 116 (1993)
15 Cal. Rptr.2d 308
In re EDWARD R., a Person Coming Under the Juvenile Court Law.
FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent,
v.
NICKI P. et al., Defendants and Appellants.
Docket No. F016702.
Court of Appeals of California, Fifth District.
January 5, 1993.
*118 COUNSEL
Mary Willans-Izett and Patricia L. Watkins, under appointments by the Court of Appeal, for Defendants and Appellants.
Phillip S. Cronin, County Counsel, and William G. Smith, Deputy County Counsel, for Plaintiff and Respondent.
Marisa Nayfach, under appointment by the Court of Appeal, for Minor.
OPINION
FRANSON, J.[*]
Nicki P. and Benjamin R. appeal from the order terminating their parental relationship (Welf. & Inst. Code[1], § 366.26) with their son, Edward R. The parents contend termination hearings conducted pursuant to this code provision deprive them of equal protection under the law. They assert section 366.26 does not permit evidence of present circumstances to be adduced while consideration of a parent's present circumstances is a safeguard feature of similar termination proceedings under Civil Code section 232, subdivision (a)(7).
We conclude that parents whose rights are subject to termination under section 366.26 are afforded substantially the same protection available to those whose rights may be terminated under Civil Code section 232, subdivision (a)(7). Hence, we need not employ the traditional equal protection analysis to resolve the issue.

STATEMENT OF CASE AND FACTS
On August 9, 1989, the Fresno County Department of Social Services (DSS) filed a dependency petition shortly after Edward R.'s birth. DSS *119 alleged the infant came within the provisions of section 300, subdivisions (a) and (b) because:
at birth he tested positively for cocaine, opiates and barbiturates and suffered withdrawal symptoms from these substances;
his mother endangered his well-being by using controlled substances during her pregnancy with him;
his condition required intensive observation and extra care; and, his parents were unable to provide regular care for him due to their substance abuse. The parents admitted the allegations of the petition.
On November 14, 1989, the juvenile court adjudged the minor a dependent child of the court and placed him in the custody of DSS. The court ordered a reunification plan which required of both parents safe and stable housing, completion of parenting classes, counseling, substance abuse treatment and visitation.
At the first six-month status review hearing originally scheduled for March 12, 1990, and completed August 13, 1990, the court determined it was necessary for the child to remain in his out-of-home placement. The parents had not complied with the reunification plan nor had they made progress toward alleviating the causes which necessitated the out-of-home placement. The father had been arrested on parole violations and returned to prison. The mother had enrolled and participated in local parenting classes and a methadone program, but later moved out of the area; she needed to resume those activities. Nevertheless, the court found there was a substantial probability that the child could be returned to his mother within six months.
By the time of the 12-month review hearing on November 30, 1990, circumstances had worsened rather than improved. The court found:
"The case plan was not complied with by the parents during the time available to them for unification. The father has not contacted the Department since his release from prison. The mother has failed to follow through with drug treatment. Neither of the parents have adequately addressed the *120 problems that led to out-of-home placement and a likely date when the minor could be returned to a parent is highly uncertain.[[2]]
"The evidence that the Court has reviewed is clear and convincing that the welfare of the minor requires that his custody remain removed from his parents at the present time and that return to either of his parents would create a substantial risk of detriment to his physical or emotional well-being.[[3]] The failure of the parents to complete court ordered treatment programs is prima facie evidence that the return to a parent would be detrimental.
"The minor cannot be returned at this time pursuant to Welfare & Institutions Code Section 366.21. The Court cannot find any substantial probability that return could be affected within the next six months.
"The Court does find clear and convincing evidence that the Department of Social Services has provided reasonable services and made reasonable efforts to implement those services to the parents to enable them to alleviate the conditions that led to out-of-home placement and to assume care for the minor. Despite those services and those efforts, the parents have not cooperated. And based on this clear and convincing evidence, the Court will order that unification services be terminated, and set this matter for a hearing pursuant to Section 366.26 of the Welfare & Institutions Code on March the 27th, 1991 at 8:30 in this department." (Italics added.)
The matter was continued various times from March 27, 1991, to September 18, 1991, when the section 366.26 parental termination hearing was held. At this hearing, the court found the minor was adoptable and it was likely he would be adopted if parental rights were terminated. Further, it determined none of the factors listed in section 366.26, subdivision (c)(1) existed which would make termination of parental rights detrimental to the child.
The court observed:
"The primary factor in this case would be the extent of regular visitation and contact to establish a relationship. The Court finds that such contact has not been maintained and such a relationship does not exist. There is no *121 detriment to the child based upon that lack of a relationship in terminating parental rights. It is in the best interest of the child that those rights be terminated."
In regard to this finding, the court noted that by the time of the section 366.26 hearing, the mother:
"... appeared to have gotten her life turned around. She has a newborn who apparently was not born with drugs in his system and she is certainly to be commended for those efforts.
"... But with respect to this particular child, he is entitled to permanency and stability that I don't believe at this point can be afforded with either of his parents simply because we have run out of time.... I simply have no more time to build a relationship with this child with either Ms. [P.] or Mr. [R.]. This is not to say that one could not be built. I have no time to do that. Edward has no time to do [sic] have that done....
"... It was an unfortunate occurrence, but the bottom line is, there have been seven visits in two years. And, unfortunately, as Ms. Berkler testified and as this Court is persuaded, that is not enough to establish or maintain a relationship with an infant, particularly in light of the fact that while his development at this point appears to be progressing normally, he does remain at risk of significant problems due to his exposure to drugs prenatally. Stability becomes particularly important for a child who has this type of handicap to overcome.
"... And I think the Department has satisfied it's [sic] burden of producing clear and convincing evidence that adoption is the appropriate plan for the minor."
Accordingly, the juvenile court terminated the parents' rights as to Edward R.

DISCUSSION

Background
Parents, whose children become dependents of the juvenile court under section 300 et seq. and are placed outside of the family home, typically have an opportunity to reunify with their children. (§ 361.5.) The hope is that with reasonable reunification services for a period of 12 or at the most 18 months, the problems which led to the dependency proceedings may be alleviated *122 and the children may be returned to their parents' custody. (See §§ 361.5, subd. (a), 366.21, subds. (e), (f), 366.22, subd. (a).) When, however, reunification has been unsuccessful and the children may not be returned, a permanent plan for the children's future becomes necessary. (See §§ 366.21, subd. (g), 366.22, subd. (a).) As a matter of public policy, the juvenile court gives first priority to adoption as the most desirable permanent plan. (§§ 366.25, 366.26.)
In those cases in which a minor has been adjudged a dependent child since before 1989 and the juvenile court has selected adoption as the permanent plan, the court in turn orders the initiation of separate proceedings in the superior court under Civil Code section 232 to declare the child free from parental control. (§ 366.25.) Civil Code section 232 authorizes termination of parental rights under a variety of scenarios, including when the child:
"... has been in out-of-home placement under the supervision of the juvenile court, the county welfare department, or other public or private licensed child-placing agency for a one-year period, if the court finds that return of the child to the child's parent or parents would be detrimental to the child and that the parent or parents have failed during that period, and are likely to fail in the future, to maintain an adequate parental relationship with the child, which includes providing both a home and care and control for the child.
"If the minor has been adjudged a dependent child of the juvenile court and placed in out-of-home placement pursuant to Section 361 of the Welfare and Institutions Code, the one-year period shall be calculated from the date of the dispositional hearing at which the child was placed in out-of-home placement pursuant to that section. If the minor is in placement under the supervision of a county welfare department or other public or private licensed child-placing agency, pursuant to a voluntary placement, as described in Section 16507.4 of the Welfare and Institutions Code, the one-year period shall be calculated from the date the minor entered out-of-home placement.
"The court shall make a determination that reasonable services have been provided or offered to the parents which were designed to aid the parents to overcome the problems which led to the deprivation or continued loss of custody and that despite the availability of these services, return of the child to the parents would be detrimental to the child. The probation officer or social worker currently assigned to the case of the child shall appear at the termination proceedings.
"If the minor has been adjudged to be a dependent child of the court pursuant to Section 300 of the Welfare and Institutions Code, the court shall *123 review and consider the contents of the juvenile court file in determining if the services offered were reasonable under the circumstances.
"Trial placement of the child in the physical custody of the parent or visitation of the child with the parent during the one-year period, when the trial placement or visitation does not result in permanent placement of the child with the parent, shall not serve to interrupt the running of the one-year period." (Civ. Code, § 232, subd. (a)(7), italics added.)
For those children adjudged dependents on or after January 1, 1989, the procedure is somewhat different. In an effort to expedite the permanent plan, a separate Civil Code section 232 proceeding is no longer necessary. Instead, if after 12 or, in some cases, 18 months of reasonable reunification efforts the juvenile court determines that return of the child to the parents' custody would create a substantial risk of detriment for the child's physical or emotional well-being, the court will schedule a hearing at which it will not only choose the permanent plan but also implement that plan. Section 366.26 authorizes the juvenile court to terminate parental rights at the selection and implementation hearing provided certain findings are made. Section 366.26 provides in pertinent part:
"(c) At the hearing the court shall proceed pursuant to one of the following procedures:
"(1) It shall terminate parental rights only if it determines by clear and convincing evidence that it is likely that the minor will be adopted. If the court so determines, the findings pursuant to subdivision (b) of Section 361.5 that reunification services shall not be offered, or the findings pursuant to subdivision (e) of Section 366.21 that the whereabouts of a parent have been unknown for six months or that the parent has failed to visit or contact the child for six months or that the parent has been convicted of a felony indicating parental unfitness, or pursuant to Section 366.21 or Section 366.22 that a minor cannot or should not be returned to his or her parent or guardian, shall then constitute a sufficient basis for termination of parental rights unless the court finds that termination would be detrimental to the minor due to one of the following circumstances:
"(A) The parents or guardians have maintained regular visitation and contact with the minor and the minor would benefit from continuing the relationship.
"(B) A minor 10 years of age or older objects to termination of parental rights.
*124 "(C) The child is placed in a residential treatment facility, adoption is unlikely or undesirable, and continuation of parental rights will not prevent finding the child a permanent family placement if the parents cannot resume custody when residential care is no longer needed.
"(D) The minor is living with a relative or foster parent who is unable or unwilling to adopt the minor because of exceptional circumstances, which do not include an unwillingness to accept legal responsibility for the minor, but who is willing and capable of providing the minor with a stable and permanent environment and the removal of the minor from the physical custody of his or her relative or foster parent would be detrimental to the emotional well-being of the minor." (Italics added.)
(1a) The parents in this case contend that section 366.26 does not take into consideration, as does Civil Code section 232, subdivision (a)(7), whether parents are likely to fail in the future to maintain an adequate parental relationship with the child. According to them, the likelihood of future failure means the court must evaluate the circumstances of the parent at the time of the actual termination hearing. As the parents read section 366.26, it does not even permit the admission of present circumstances evidence. From this they assert section 366.26 violates their equal protection rights.
While the parties devote much effort to issues of "similarly situated" parents and standard of review, it appears unnecessary to reach these questions. Despite the parents' argument to the contrary and as discussed below, parents whose rights are subject to termination under Civil Code section 232, subdivision (a)(7) do not receive greater safeguards than those whose rights may be terminated according to the new statutory scheme. Thus, absent the underlying premise of unequal treatment, the issues of similarly situated parents and rational basis versus strict scrutiny analysis become moot.

Likelihood of Future Failure and Present Circumstances
As previously noted, the parents argue the reference in Civil Code section 232, subdivision (a)(7) to a parent's likely failure in the future to maintain an adequate parental relationship with the child means the court must consider a parent's present circumstances before terminating his or her rights. They cite in this regard In re Carmaleta B. (1978) 21 Cal.3d 482, 493 [146 Cal. Rptr. 623, 579 P.2d 514], in which our state Supreme Court observed:
"It is well settled that an order to free a child from parental custody and control must rest on present circumstances as well as past acts although such *125 prior acts are evidence which may be considered by the court in deciding whether there is sufficient showing to justify the order. (In re Morrow (1970) 9 Cal. App.3d 39, 54, 56 [88 Cal. Rptr. 142]; In re Zimmerman (1962) 206 Cal. App.2d 835, 844-845 [24 Cal. Rptr. 329]; In re Cardenas (1961) 194 Cal. App.2d 849, 855 [15 Cal. Rptr. 238]; In re Williams (1955) 133 Cal. App.2d 515 [284 P.2d 510].)"
The court in Carmaleta B. determined a parental neglect finding which would support a Civil Code section 232, subdivision (a)(2) petition could not be predicated solely on the acts which initially caused the dependency proceedings. Otherwise, the trial court would be doing nothing more than finalizing an antecedent interlocutory judgment of the juvenile court. (Carmaleta B., supra, 21 Cal.3d at pp. 493-494.) Accordingly, the court held a parent is:
"`... entitled to have the circumstances leading to the [dependency] order[s] reviewed in light of subsequent events, and with consideration of the nature of the order sought in [this proceeding].... It [was] reasonable to consider under subdivision (b) [of section 232] whether the conditions which gave rise to the ... neglect still persist[ed].'" (Id. at p. 494.)
Notably, the petition in Carmaleta B. did not include a Civil Code section 232, subdivision (a)(7) allegation. Thus, one could argue that in this case the parents' reliance on Carmaleta B. is unfounded. However, at least one appellate court has determined it can find no reason why the present circumstances language in Carmaleta B. should not apply equally to situations involving Civil Code section 232, subdivision (a)(7). (In re Jonathan R. (1989) 211 Cal. App.3d 1214, 1220 [259 Cal. Rptr. 863].)
"Without considering the current situation of the parents, it would be impossible for the court to make the required determination that they are likely to fail in the future to maintain an adequate parental relationship with the child." (211 Cal. App.3d at p. 1221.)
We will assume the parents here and the court in Jonathan R. are correct that the language respecting likelihood of a parent's future failure requires a court to consider a parent's present circumstances. The present claim of an equal protection violation is nevertheless unmeritorious.
In analyzing the statutory scheme applicable to post-1988 adjudications of dependency, it appears the Legislature has developed a mechanism so that the juvenile court will properly determine whether the conditions which gave rise to the dependency still persist. At every review hearing before the *126 section 366.26 selection and implementation hearing, the juvenile court must consider a parent's efforts or progress, through reunification, to overcome the problems which led to the dependency. (§§ 366.21, subds. (e), (f), 366.22, subd. (a).) This is consistent with the law's stated goal of reunifying the family if possible within the mandated time constraints. (See § 361.5.) In addition, at each status review hearing the court must project a likely date by which the child may be returned to the home or placed for adoption or legal guardianship. (§ 366.) In order to project when the child may be returned or given a permanent placement, the court must attempt to predict the likelihood for reunification which turns, in large measure, on the parent's ability to maintain an adequate parental relationship with the child. Thus, under the new statutory scheme as well as Civil Code section 232, subdivision (a)(7), we find the court evaluates the likelihood of a parent's future failure to maintain an adequate parent-child relationship.
Once the juvenile court orders a section 366.26 hearing, however, the attention shifts to assessing whether the minor is adoptable. (§§ 366.21, subd. (i), 366.22, subd. (b).) At this juncture, the juvenile court has impliedly determined the problems leading to dependency still persist despite reasonable reunification efforts. In fact, the court at this point will terminate reunification services to the parent. (§§ 366.21, subds. (g), (h), 366.22, subd. (a).)
Under the new statutory scheme, the Legislature essentially bifurcates the termination proceedings involving dependent children of the juvenile court. In a case where the juvenile court has ordered reunification services but reunification has been unsuccessful, the basis for termination is established at the 12-or 18-month hearing with the court finding that the minor cannot or should not be returned to his or her parent or guardian. (§ 366.26, subd. (c)(1).) Then at the section 366.26 hearing, the court determines the child's adoptability. (§ 366.26, subd. (c)(1).) A parent's present circumstances are irrelevant to the adoptability issue which must be decided at the section 366.26 hearing.
Bifurcation of the termination proceedings acknowledges the change in focus from the parents' chances for reunification at the status review hearings to the child's chances for adoption at the selection and implementation hearing. We find nothing in the law, Carmaleta B. included, which prohibits the Legislature from so acting. Nor is the juvenile court finalizing an antecedent interlocutory judgment, to use language from Carmaleta B., as the parents argue. The concern in Carmaleta B. was that a court could terminate parental rights based on the neglect which led to the child's dependency rather than whether such neglect persisted. Certainly, the new *127 statutory scheme emphasizes the importance of reunification efforts and a parent's progress in curing the ills which led to dependency. To adopt the parents' approach would require the juvenile court to relitigate, for all intents and purposes, the basis for termination by necessarily considering the parents' circumstances at the time of the section 366.26 hearing.
This is not to say, however, that the juvenile court should refuse to consider the circumstances as they exist by the time of section 366.26 hearing. First, present circumstances are relevant in resolving whether the parent has maintained regular visitation and contact with the minor and the minor would benefit from continuing the relationship. (§ 366.26, subd. (c)(1)(A).) An affirmative finding in this regard would warrant a juvenile court decision not to terminate parental rights. Interestingly, under the pre-1989 law, regular visitation and contact and the benefit to the child were issues to be determined in the juvenile court before it authorized the initiation of a separate termination proceeding; they were not express criteria for the superior court to evaluate in the Civil Code section 232 action. Here, there was present circumstances evidence introduced by the county on the visitation and relationship issue in this case. The parents do not challenge the court's finding against them on this issue.
(2) The mother does claim that the court refused to admit evidence at the section 366.26 hearing which would "probably" have shown that she had met the reunification requirements. The court had sustained a relevancy objection to the question, "Are you aware that my client attended a parenting class?" Mother's counsel posed this query to a social worker. Notably, mother's counsel neither challenged the objection nor the court ruling. Thus, she may be deemed to have waived the issue (Evid. Code, § 353.) On the merits, however, the court properly ruled the question was irrelevant. The question of attendance related to the matter of reunification which was not at issue by the time of this hearing nor was it germane to whether she had maintained regular visitation and contact with the child. (§ 366.26, subd. (c)(1)(A).)
(1b) Finally, a parent may seek to introduce present circumstances evidence to the juvenile court in the form of a modification petition (§ 388; see also, Cal. Rules of Court, rule 1432). The Legislature has left the door open for a parent, citing changed circumstances, to move to modify the juvenile court's order leading up to the section 366.26 hearing, e.g., the orders continuing out-of-home placement and setting the selection and implementation hearing based on a detriment finding. (§§ 385, 388.) While a parent bears the burden of proof on a modification, this makes sense considering the court's previous determination of substantial risk of detriment which the county had the burden of proving. In this case, however, the *128 mother who had, according to the court's remarks, made some progress in her lifestyle, did not seek to modify pursuant to section 388 the court's earlier determination.
Nevertheless, the juvenile court does appear to have considered the social worker's report about a change in the mother's circumstances. The judge noted,
"This is a case, with respect to Miss [P.], where her efforts have simply been too late to affect reunification (with) this child. And this is not an easy decision for me to make because I know she is providing for other children and, apparently, providing for them very effectively. She has, at this point, appeared to have gotten her life turned around. She has a newborn who apparently was not born with drugs in his system and she is certainly to be commended for those efforts.
"Miss [P.], I don't mean in anyway to slight those efforts. But with respect to this particular child, he is entitled to permanency and stability that I don't believe at this point can be afforded with either of his parents simply because we have run out of time.... I simply have no more time to build a relationship with this child with either (of his parents). This is not to say that one could not be built. I have no time to do that. Edward has no time to ... have that done. He's entitled at this point in his life to have his future determined and to have stability provided to him. And under the circumstances, I am persuaded by the evidence, which I find clear and convincing, that termination of parental rights and adoption is in his best interest."
Thus, it appears the court did weigh the evidence of a change in the mother's circumstances, i.e., that she possibly had become drug free as of the time of the termination hearing and was able to provide a stable home for Edward as against the evidence that Edward was suitable for and needed an adoptive home for his own stability and future well-being. The court then found by clear and convincing evidence that termination of parental rights and adoption was in Edward's best interest.
Considering the two statutory schemes for terminating the parent-child relationship, we find no merit to the equal protection argument. (3) As Justice Holmes explained years ago, our Constitution does not guarantee a legislative status quo. "[T]he Fourteenth Amendment does not forbid statutes and statutory changes to have a beginning and thus to discriminate between the rights of an earlier and later time." (Sperry & Hutchinson Co. v. Rhodes (1911) 220 U.S. 502, 505 [55 L.Ed. 561, 562, 31 S.Ct. 490]; see also *129 Williams v. Walsh (1912) 222 U.S. 415, 421 [56 L.Ed. 253, 255, 32 S.Ct. 137].) While a state legislature obviously may not impinge on fundamental personal rights protected by the Constitution absent a showing of a compelling state interest, the parental termination procedures under section 366.26 do not effect such a result.

DISPOSITION
The judgment is affirmed.
Stone (W.A.), Acting P.J., and Ardaiz, J., concurred.
Appellants' petition for review by the Supreme Court was denied April 1, 1993. Kennard, J., was of the opinion that the petition should be granted.
NOTES
[*] Retired Presiding Justice of the Court of Appeal, Fifth District, sitting under assignment by the Chairperson of the Judicial Council.
[1] All statutory references are to the Welfare and Institutions Code unless otherwise indicated.
[2] The mother had not had any contact with the minor or DSS since August 1990. Indeed, neither parent was present at the 12-month review hearing.
[3] In supplemental briefing, the father also challenges the constitutionality of section 366.26 because on its face as well as on the face of section 366.21, subdivision (f) and 366.22, subdivision (a) there is no requirement that the substantial risk of detriment finding must be made by clear and convincing evidence. However, since the juvenile court wisely made its detriment finding by clear and convincing evidence, the father is in no position to complain.