[No. B126611. Second Dist., Div. Four. June 1, 1999.]

In re JASMINE T., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND
FAMILY SERVICES, Plaintiff and Respondent, v.
GALE G., Defendant and Appellant.

**COUNSEL**

Melissa A. Chaitin, under appointment by the Court of Appeal, for Defendant and Appellant.

Lloyd W. Pellman, County Counsel; Auxiliary Legal Services, Patrick D. Goodman and Kristine P. Miles for Plaintiff and Respondent.

OPINION

EPSTEIN, J.—Gale G. (mother) appeals the termination of her parental rights. She argues that legal guardianship was the appropriate permanent plan because her daughter, Jasmine, was placed with a relative who could provide a stable home as a legal guardian. We conclude the trial court appropriately ordered adoption and affirm the judgment.

### FACTUAL AND PROCEDURAL SUMMARY

Jasmine was born on October 31, 1994.[1] In July 1997, Jasmine's paternal grandmother, Linda W., took custody of Jasmine after finding her alone at mother's apartment. Linda W. contacted the Los Angeles County Department of Children and Family Services (DCFS) two weeks later. Linda W. retained custody of Jasmine and was granted de facto parental status.

DCFS filed a petition under Welfare and Institutions Code section 300 alleging that mother left Jasmine alone in her apartment without making provisions for Jasmine's care.[2] It also alleged that (1) mother failed to provide Jasmine with the basic necessities of life, thereby endangering Jasmine's well being; (2) mother had a long history of alcohol abuse; (3) mother's residence was in a dirty condition with piled-up dishes, clothes on the floor, and a limited food supply; and (4) Jasmine's sister was in the dependency system and mother failed to reunify with her. The court found a prima facie case for detaining Jasmine under section 300, subdivisions (b), (g), and (j), and later sustained the petition on those counts.

In December 1997, the court found that mother had an extensive history of alcohol abuse. It denied reunification services under section 361.5, subdivision (c).[3]

A social worker report prepared on July 14, 1998, recommended that parental rights be terminated. Mother had not called or visited Jasmine since June 8, 1998. Linda W. had begun, but had not completed, the clearance process for adoption. Linda W. was eager to adopt Jasmine and the home

---

[1]Mother's three other children are not included in this appeal.

[2]All further statutory citations are to this code unless otherwise indicated.

[3]Reunification services need not be provided if: "[T]he parent or guardian of the child has a history of extensive, abusive, and chronic use of drugs or alcohol and has resisted prior treatment for this problem during a three-year period immediately prior to the filing of the petition that brought that child to the court's attention, or has failed or refused to comply with a program of drug or alcohol treatment described in the case plan required by Section 358.1 on at least two prior occasions, even though the programs identified were available and accessible." (§ 361.5, subd. (b)(12).)

study was likely to be approved in the next few months. The report indicated that Jasmine's relationship with Linda W. was "strong, positive, full of love, and characteristic of a parent child relationship. Jasmine calls Ms. [W.] 'Mom.' Jasmine is growing up in a home that meets all of her needs and provides her with the love, security, support and structure she needs. Jasmine is considered happy and well adjusted in this home. Adoption by Ms. [W.] is considered to be in Jasmine's best interest. Ms. [W.] wants to adopt Jasmine to provide her with the stability she needs. Ms. [W.] loves Jasmine a great deal."

A September 10 report asked that parental rights be terminated, indicating that there was little interaction between Jasmine and mother. A psychologist, Dr. Ronald Fairbanks, found that Jasmine had a positive relationship with her paternal grandmother and a relatively positive relationship with mother. He evaluated the attachment between Jasmine and mother as minimal or nonexistent.

From February 16, 1998, to June 26, 1998, mother tested negative for alcohol. Mother enrolled in a program to receive aid in finding employment and secured her own residence.

The court terminated parental rights and recommended a kinship adoption. Mother filed a timely notice of appeal.

## DISCUSSION

The sole issue is whether the trial court properly terminated parental rights. As we explain, it did.

At the selection and implementation hearing the court must order one of three permanent plans for the dependent child—adoption, legal guardianship, or foster care. Adoption is the preferred permanent plan. (*In re Beatrice M.* (1994) 29 Cal.App.4th 1411, 1416 [35 Cal.Rptr.2d 162].) Freeing a child for adoption requires termination of parental rights. "[I]n order to terminate parental rights, the court need only make two findings: (1) that there is clear and convincing evidence that the minor will be adopted; and (2) that there has been a previous determination that reunification services shall be terminated." (*Cynthia D.* v. *Superior Court* (1993) 5 Cal.4th 242, 249-250 [19 Cal.Rptr.2d 698, 851 P.2d 1307].) Under section 366.26, subdivision (c)(1), there are four exceptions to this rule.[4]

Mother does not dispute that Jasmine is likely to be adopted, as Linda W. clearly expressed a desire to adopt the child. Mother does not

---

[4]The four exceptions under section 366.26, subdivision (c)(1) are as follows: "(A) The parents or guardians have maintained regular visitation and contact with the child and the

challenge the court's determination denying reunification services. Nor does mother argue that any of the four exceptions under section 366.26, subdivision (c)(1) apply in this case.

Instead mother seeks to create an additional exception when the potential adoptive parent is a relative to the birth parent. She argues that Jasmine's placement with her paternal grandmother fulfilled the goal of family preservation (§§ 202 and 300.2), and thereby permitted the court to select legal guardianship as a permanent plan. Selection of legal guardianship, she argues, would permit her to maintain her relationship with Jasmine.[5]

First, and most importantly, family preservation has not been achieved in this case. Both mother and father failed to reunify with Jasmine.[6] Within the dependency scheme, consideration is given to placement of a dependent child with a relative who can provide legal permanence for the child if reunification fails. (§ 361.3, subd. (a)(7)(H).) Placement with a relative is not tantamount to family preservation. To the contrary, absent specific circumstances, reunification services are required for the parents even if a dependent child is placed with a relative. (§ 361.5.) "Family preservation ceases to be of overriding concern if a dependent child cannot be safely returned to *parental custody* and the juvenile court terminates reunification services. Then, the focus shifts from the parent's interest in reunification to the child's interest in permanency and stability. [Citation.]" (*In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1340 [63 Cal.Rptr.2d 562], italics added.)

Pursuant to section 366.26, subdivision (c)(1), absent one of four specific exceptions, the court must order adoption as the permanent plan for a child found likely to be adopted. (*In re Beatrice M., supra*, 29 Cal.App.4th at p. 1420.) The fact that a potential adoptive parent is a relative does not

---

child would benefit from continuing the relationship. [¶] (B) A child 12 years of age or older objects to termination of parental rights. [¶] (C) The child is placed in a residential treatment facility, adoption is unlikely or undesirable, and continuation of parental rights will not prevent finding the child a permanent family placement if the parents cannot resume custody when residential care is no longer needed. [¶] (D) The child is living with a relative or foster parent who is unable or unwilling to adopt the child because of exceptional circumstances, that do not include an unwillingness to accept legal or financial responsibility for the child, but who is willing and capable of providing the child with a stable and permanent environment and the removal of the child from the physical custody of his or her relative or foster parent would be detrimental to the emotional well-being of the child. This subparagraph does not apply to any child who is living with a nonrelative and who is either (i) under six years of age or (ii) a member of a sibling group where at least one child is under six years of age and the siblings are, or should be, permanently placed together."

[5]In the dependency context, even with a kinship adoption, the adoptive parent may decide that the birth parent cannot maintain contact with the child. (*In re Kimberly S.* (1999) 71 Cal.App.4th 405, 411-412 [83 Cal.Rptr.2d 740]; see Fam. Code, § 8714.5 et seq.)

[6]Father is not a subject of this appeal.

constitute an exception, allowing the court to order legal guardianship. (*Ibid.*) At the permanency planning hearing, the court is required to choose the disposition best for the child even though the child's and parent's interests have diverged. (*Cynthia D.* v. *Superior Court, supra,* 5 Cal.4th at p. 254.) Here, the trial court properly chose adoption as Jasmine's permanent plan.

Mother's reliance on *Moore* v. *East Cleveland* (1977) 431 U.S. 494 [97 S.Ct. 1932, 52 L.Ed.2d 531] is misplaced. In that case, a plurality found that a housing ordinance which limited the categories of family members that could reside together violated the Fourteenth Amendment. ▮ " '[F]reedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment.' " (*Id.* at p. 499 [97 S.Ct. at p. 1935], quoting *Cleveland Board of Education* v. *LaFleur* (1974) 414 U.S. 632, 639-640 [94 S.Ct. 791, 796, 39 L.Ed.2d 52].) "Although a parent's interest in the care, custody and companionship of a child is a liberty interest that may not be interfered with in the absence of a compelling state interest, the welfare of a child is a compelling state interest that a state has not only a right, but a duty, to protect. [Citations.]" (*In re Marilyn H.* (1993) 5 Cal.4th 295, 307 [19 Cal.Rptr.2d 544, 851 P.2d 826].)

## DISPOSITION

The judgment is affirmed.

Vogel (C. S.), P. J., and Curry, J., concurred.