125 Cal.Rptr.2d 630 (2002)
102 Cal.App.4th 717
In re CELINE R., et al., Persons Coming Under the Juvenile Court Law.
Kern County Department of Human Services, Plaintiff and Respondent,
v.
Mary M. et al., Defendants and Respondents,
Crystal M., et al., Appellants.
No. F040063.
Court of Appeal, Fifth District.
September 30, 2002.
Review Granted December 18, 2002.
*632 John L. Dodd, Tustin, under appointment by the Court of Appeal, for Appellants.
B.C. Barmann, Sr., County Counsel and Susan M. Gill, Deputy County Counsel, Plaintiff and Respondent.
No appearance for Defendants and Respondents.

*631 OPINION

VARTABEDIAN, J.
Dependent minors Crystal M., Celine R. and Angel R. appeal from February 2002 orders terminating parental rights (Welf. & InstCode, § 366.26) as to Celine and Angel.[1] Nine-year-old Crystal is the half-sister of five-year-old Celine and three-year-old Angel R. The children contend the juvenile court erred at the February 2002 hearing by not heeding their attorney's (1) request to continue the hearing for a bonding study evaluating the strength of their sibling relationship, and (2) suggestion to relieve her from representing all three of them. The heart of their appeal raises questions about the applicability of a new statutory exception, based upon sibling relationships (§ 366.26, subd. (c)(1)(E)), to the presumption that adoption is the preferred permanent plan for dependent children such as Celine and Angel. On review, we will affirm.
We hold section 366.26, subdivision (c)(1)(E) simply articulates a fifth factual scenario in which a court could find a "compelling reason for determining that termination would be detrimental" (§ 366.26, subd. (c)(1)) to the child who is the subject of the selection and implementation hearing. The new language does not impose a duty on either the court or the social services agency to address its applicability.

PROCEDURAL AND FACTUAL SUMMARY
The Kern County Superior Court adjudged the children juvenile dependents and removed them from parental custody in August 2000. Respondent Kern County Department of Human Services (the Department) initiated the underlying dependency proceedings after law enforcement discovered a methamphetamine lab in the family's home. By the beginning of September 2000, Crystal, then age seven, was placed with a maternal aunt in Delano while three-year-old Celine and one-yearold Angel were placed with a paternal uncle and his long-term girl friend in Bakersfield.
In April 2001, when the parents failed to reunify, the juvenile court ordered Crystal into long-term foster care because she was unadoptable and there was no one willing and appropriate to accept legal guardianship of her. Crystal continued to reside with her maternal aunt. With regard to Celine and Angel, the court set a section 366.26 hearing to select and implement a permanent plan.
As of the originally scheduled section 366.26 hearing in August 2001, there was no question that Celine and Angel were likely to be adopted if parental rights were terminated. However, the Department in its written assessment (§ 366.21, subd. (i)) for the August hearing requested a 180 day continuance in order to search for a *633 prospective adoptive home for both Celine and Angel. Their paternal uncle wanted to adopt the two. However, his girlfriend, who provided the majority of Celine's and Angel's care, vacillated and currently did not want to adopt them.
The court, in August 2001, found: termination of parental rights would not be detrimental to Celine and Angel and they had a strong probability for adoption. It in turn identified adoption as the children's permanent placement goal and continued the section 366.26 hearing to late February 2002 so that a prospective adoptive home could be identified.
In its supplemental report prepared four days before the continued section 366.26 hearing, the Department advised the court that both the paternal uncle and his girl friend were committed to adopting Celine and Angel. Angel, by then four years old, did not understand the concept of adoption. Celine, who was a year and a half older, said she wanted to be adopted. She understood adoption to mean her uncle and his girl friend would be her legal parents and she would live with them until she was 18.
The day after the Department's social worker finished his report he received a phone call from the minors' counsel. Counsel reported she had unsuccessfully tried to contact the uncle and his girlfriend in order to speak with Celine and Angel about "how things are going." In the meantime, counsel learned from Crystal's aunt that visitation was not occurring between Crystal and her younger half-siblings. While the respective adult relatives had maintained a fairly good visiting relationship, the visits had stopped at some point. Counsel also learned from Crystal that she would be very hurt and saddened if Celine and Angel were adopted and she became totally separated from them.
The social worker in turn investigated the matter. While he too was unable to reach Celine's and Angel's caregivers, he spoke with Crystal's aunt who said the last visit between the children was two months earlier in December 2001. He also learned there had been some change in telephone numbers which possibly accounted for the visitation breakdown.
At the continued section 366.26 hearing, the Department submitted the matter on its original assessment and supplemental report. The parents likewise submitted. Then, minors' counsel reported her recent inability to reach Celine's and Angel's caregivers, the problem with sibling visitation, and Crystal's concerns. Counsel went on to ask the court to order a bonding study to see whether the three children were so bonded that termination of parental rights would jeopardize their well-being. She added that the children had enjoyed visitation with one another and were bonded. Counsel believed the long-term emotional interests, especially of Crystal, "could really be in jeopardy." Counsel relied on a recent change in the law authorizing the court to find termination would be detrimental if there would be substantial interference with a child's sibling relationship. (§ 366.26, subd. (c)(1) & subd. (c)(1)(E).)[2]
*634 Minors' counsel acknowledged Celine and Angel had not lived with Crystal for more than a year and that, even if the court did not terminate parental rights, they still would not live together. Nevertheless, she believed the three should know each other and visit. Counsel then volunteered:
"maybe the court should allow me to conflict out on Celine and Angel, then I could represent Crystal. [¶] I'm not sure howthis presents a real problem when we are dividing up children and I attempt to represent all three because I know probably going to adoption, being secure, having permanency is really what's necessary for all of the kids, and we have a very permanent plan for two of the kids. And I don't know. They are all young. I don't know if there is that kind of bonding that would scar these little kids never seeing their sister again."
The court in turn inquired of the social worker about sibling visits and the social worker confirmed what he had recently learned.
Thereafter, the court interpreted the recent statutory change to focus not on Crystal but rather on Celine and Angel. The court then refused to continue the matter and made the necessary findings to terminate parental rights.
Minors' counsel filed a notice of appeal on behalf of Crystal, Celine and Angel.

DISCUSSION

I. Continuance To Consider Applicability Of Section 366.26, Subdivision (c)(1)(E)

Appellate counsel for the minors contends the juvenile court did not have all the necessary information to make a fullyinformed decision and therefore should have continued the section 366.26 hearing so that it could obtain a bonding study and updated information on sibling visitation and the wishes of Celine and Angel. Counsel's arguments depend on the language of section 366.26, subdivision (c)(1)(E). (See fn. 2, ante.) He assumes the new statutory exception imposed a duty on either the trial court or the Department to address its applicability. In the absence of such information, counsel argues, there was good cause shown for the continuance. We disagree.[3]
If there is clear and convincing proof of adoptability, a point which is uncontested here, the statutory presumption is that termination is in a dependent child's best interests and therefore not detrimental. (§ 366.26, subd. (b); see also In re Lorenzo C. (1997) 54 Cal.App.4th 1330, 1343-1344, 63 Cal.Rptr.2d 562.) In other words, the decision to terminate parental rights at the section 366.26 hearing is virtually automatic if the child is going *635 to be adopted. (In re Jasmine D. (2000) 78 Cal.App.4th 1339, 1348, 93 Cal.Rptr.2d 644.) Although section 366.26, subdivision (c)(1) acknowledges that termination would be detrimental under specifically designated circumstances, a finding of no detriment is not a prerequisite to the termination of parental rights. (Ibid.) Consequently, the court does not have what would amount to a sua sponte duty to determine whether one of the exceptions detailed in section 366.26, subdivision (c)(1) applies.
The newly-enacted language, set forth in section 366.26, subdivision (c)(1)(E) (see fn. 2, ante), does not change this procedural equation. The new subdivision instead simply identifies a fifth factual scenario in which the court could find a "compelling reason for determining that termination would be detrimental to the child." (§ 366.26, subd. (c)(1).)
We find nothing in the language of section 366.26, subdivision (c)(1)(E) which imposes a duty on either the trial court or the Department, for that matter, to address its applicability. When the statutory language is clear and unambiguous, as in this case, it controls. There is nothing for us to interpret and we need not inquire into legislative intent. (Lungren v. Deukmejian (1988) 45 Cal.3d 727, 735, 248 Cal.Rptr. 115, 755 P.2d 299.)
With special regard to the Department, we add that its statutory duty to report for purposes of a section 366.26 hearing does not extend to whether the new exception applies. (§ 366.21, subd. (i) & § 366.22, subd. (b).) At most, the Department must prepare an assessment that shall include, relevant to this part, a "review of the amount of and nature of any contact between the child and his or her parents or legal guardians and other members of his or her extended family since the time of placement." (§ 366.21, subd. (i) & § 366.22, subd. (b).) The term "extended family" includes the child's siblings. (Ibid.) The Legislature notably did not amend the requirements for an assessment in light of the new exception in section 366.26, subdivision (c)(1)(E).[4]
We agree instead with the apparent position of the minors' trial counsel, namely that the minors had the burden of showing that termination would be detrimental because it would cause a substantial interference with their sibling relationship. This was precisely why counsel requested a bonding study to see if the new exception applied here.
The problem with trial counsel's argument for a bonding study was her near exclusive reliance on Crystal's concerns and the possible impact on Crystal. Crystal was not the subject of the termination hearing, however. The court had previously selected for her a permanent plan of long-term foster care. Section 366.26, subdivision (c)(1) and its exceptions pertain to the child for whom the court is conducting the hearing to select and implement a permanent plan. The purpose of the February 2002 hearing was to select and implement a permanent plan for Celine and Angel. In order for the court to refrain from selecting adoption as the permanent plan for Celine and Angel, given their adoptability, it would have to "find a compelling reason for determining that termination would be detrimental to the child," in this case them. (§ 366.26, subd. (c)(1).)
*636 On this point, counsel all but admitted she had no reason to believe adoption would be detrimental to Celine and Angel. Counsel acknowledged Celine and Angel had not lived with Crystal for more than a year, the children were young, and counsel did not know if the kind of sibling bond Crystal felt was reciprocated by Celine and Angel. At most, there was evidence the three children who shared a sibling bond had enjoyed their visits together.
Notably, however, counsel did not request a continuance in order to communicate with Celine who expressed a desire to be adopted and Angel who did not understand the concept of adoption. Nor did counsel offer any explanation for waiting until the date of the continued hearing in late February 2002 to request a bonding study and consequently another continuance. In this regard, we observe the statute providing for new exception was filed with the Secretary of State on October 12, 2001, and took effect January 1, 2002.[5]
The granting of a continuance as well as an order for a bonding study are discretionary matters with the juvenile court. (§ 352, subd. (a); In re C.P. (1985) 165 Cal.App.3d 270, 274, 230 Cal.Rptr. 864; In re Lorenzo C. (1997) 54 Cal.App.4th 1330, 1339, 63 Cal.Rptr.2d 562.) We cannot say on this record that the juvenile court abused its discretion by refusing to continue the case for a bonding study or other information.

II. Trial Counsel's Representation Of All Three Minors

Appellate counsel also urges us to reverse the termination order because the juvenile court did not take minors' counsel up on her suggestion that she be relieved from representing Celine and Angel. In appellate counsel's estimation, Crystal's opposition to termination created a potential conflict of interest for the minors' trial counsel and the Department's support of termination created an actual conflict of interest.
We need not decide whether there was a sufficient showing on the facts or the law to have required the trial court to relieve minors's counsel from representing all three children. Any possible error was harmless under any standard. Minors' trial counsel argued in favor of a continued relationship between Crystal, Celine and Angel. Assuming, for the sake of argument, Celine and Angel favored termination thus giving rise to a conflict, then Celine and Angel were not prejudiced because the court entered an order terminating parental rights. If, on the other hand, Celine and Angel shared their half-sister's position, then in fact there was no conflict in counsel's representation of all three minors.

DISPOSITION
The orders terminating parental rights herein are affirmed.
WE CONCUR: DIBIASO, Acting P.J., and GOMES, J.
NOTES
[1] Hereinafter, all statutory references are to the Welfare and Institutions Code unless otherwise indicated.
[2] Section 366.26, subdivision (c)(1) and subdivision (c)(1)(E) which took effect January 1, 2002 provides:

"If the court determines, based on the assessment provided as ordered under subdivision (i) of Section 366.21 or subdivision (b) of Section 366.22, and any other relevant evidence, by a clear and convincing standard, that it is likely the child will be adopted, the court shall terminate parental rights and order the child placed for adoption. ... A finding . .. under Section 366.21 or 366.22, that the court has continued to remove the child from the custody of the parent or guardian and has terminated reunification services, shall constitute a sufficient basis for termination of parental rights unless the court finds a compelling reason for determining that termination would be detrimental to the child due to one or more of the following circumstances: [¶] ... [¶]
"(E) There would be substantial interference with a child's sibling relationship, taking into consideration the nature and extent of the relationship, including, but not limited to, whether the child was raised with a sibling in the same home, whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and whether ongoing contact is in the child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption."
[3] Because the notice of appeal was executed on behalf of all three children, we refrain from considering respondent's argument that Crystal lacks standing to challenge the termination order.
[4] To the extent appellants complain the Department's review of their sibling contact was stale, we find they waived their complaint by failing to raise such an objection in the trial court. (Evid.Code, § 353; see also In re Crystal J. (1993) 12 Cal.App.4th 407, 413, 15 Cal. Rptr.2d 613.)
[5] At the request of minors's counsel we have taken judicial notice of the legislative history underlying section 366.26, subdivision (c)(1)(E).