Filed 6/23/14  In re S.R. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re S.R. et al., Persons Coming Under the Juvenile Court Law. | 2d Juv. No. B252458 (Super. Ct. Nos. J068138, J068261) (Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>A.V. et al.,<br><br>    Defendants and Appellants. | ORDER MODIFYING OPINION AND DENYING REHEARING [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on May 28, 2014, be modified as follows:

1.  On page 1, line 5 in the first paragraph, the words "abuse its discretion" are changed to "err," so that the sentence reads:  "2) the juvenile court did not err by terminating parental rights and finding that the beneficial relationship exception to adoption did not apply in this case."

2.  On page 9, line 4 in the first paragraph, the following sentence is deleted:  "Moreover, father has not shown any abuse of discretion."

There is no change in the judgment.

Appellant's petition for rehearing is denied.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re S.R. et al., Persons Coming Under the Juvenile Court Law. | 2d Juv. No. B252458 (Super. Ct. Nos. J068138, J068261) (Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY,  Plaintiff and Respondent,  v.  A.V. et al.,  Defendants and Appellants. | |

A.V. (mother) and M.R. (father) appeal orders (judgments) terminating their parental rights to S.R. and C.R, their children.  (Welf. & Inst. Code, § 366.26.)[1]  We conclude, among other things, that:  1) the juvenile court did not err by finding the children were likely to be adopted within a reasonable time, and 2) the juvenile court did not abuse its discretion by terminating parental rights and finding that the beneficial relationship exception to adoption did not apply in this case.  We affirm.

---

[1] All statutory references are to the Welfare and Institutions Code.

FACTS

On December 30, 2010, a social worker from the Ventura County Human Services Agency (HSA) received information that mother was unable to take care of a child because of her drug addiction. Mother tested positive for methamphetamines at a probation office. When the testing took place, she was with S.R., her daughter who was born in February 2010. Mother had a history of using illegal drugs. In July 2010, she tested positive for Benzodiazepines.

On January 19, 2011, a probation officer told HSA that mother violated her probation conditions because of a positive drug test and her failure to enroll in a drug treatment program. Mother was on probation after convictions of child abuse and drug possession. HSA took protective custody of S.R. Father subsequently agreed to a "safety plan," which provided S.R. would stay with him and mother would receive supervised visits.

HSA filed a dependency petition for S.R. In March 2011, the juvenile court sustained the petition and found S.R. to be "a person described by subdivision (b) of Section 300 of the Welfare and Institutions Code." It ruled: 1) father would have custody of the child under HSA's supervision, and 2) HSA "shall provide Family Maintenance services to the child and the father" and "Family Reunification services to the child and the mother."

In April 2011, mother gave birth to C.R. HSA filed a dependency petition under section 300 for C.R. The juvenile court found C.R. at risk because of "mother's continued abuse of illegal drugs" and because "father failed to intervene to protect the child." It ordered custody for mother provided she remain in the Tender Life Maternity Home.

At a June 30, 2011, family maintenance review hearing involving S.R., the juvenile court ordered: 1) "physical custody of the child shall remain with the parents," and 2) the parents must comply with an HSA case plan. It provided a warning that failure to comply could lead to an "out of home placement."

2

In a November 10th status review report, HSA recommended that family maintenance services be continued for six months for mother and father. It noted that father had been "unavailable or unwilling to meet with" the social worker since June 16, 2011. Father "refused to sign" a case plan for a drug and alcohol assessment. He was scheduled for eight substance abuse tests, but he completed only two. Father claimed he was attending weekly Alanon meetings, but he did not provide the worker with a "signed yellow card."

On February 23, 2012, HSA filed a memorandum, stating that it had received a report that "an adult female was seen with a syringe in her arm and holding a child." Police arrived at the residence. They knocked on the door. Nobody responded. They saw S.R. inside and noticed that the television was on. Father was home, but he ignored the police officers' "attempts to engage him prior to police gaining entry into the home." The children were "dirty and unkempt." There was "old and moldy food" in the children's bedroom. The home was "dirty and cluttered with clothing strewn around the living room and bedrooms and piled on the children's beds." S.R. had "red marks around her inner thighs." HSA determined that the children had to be removed. The juvenile court ordered the children to be placed in a foster home because the home mother and father provided was "in a dangerous and unsanitary condition." It set the case for a jurisdiction and disposition hearing.

In a jurisdiction/disposition report, HSA recommended that the children remain in "out of home care," that mother receive family reunification services, but that father be "bypassed" for those services under section 361.5, subdivision (b)(13). It said father had "substance abuse related arrests dating back to 1986" and had served four prison sentences. After a contested hearing, the juvenile court found "mother left the children in a dangerous and unsanitary home." It said there was insufficient evidence to bypass services for the father. The court scheduled a six-month review.

In a January 2, 2013, status review report, HSA recommended that family reunification services for mother and father be terminated. The social worker stated that on July 12, 2012, "mother was arrested for being under the influence of a controlled

3

substance." Mother's probation officer told the social worker that mother "'admitted the violations' and 90 days in jail are 'hanging over her head.'" The social worker reported that for the last six months, father did not meet with the worker and "has been unwilling to discuss his case plan services." The worker concluded he had a recalcitrant attitude and "has not benefited from services." On September 17, 2012, mother entered the Todd Road Jail. The social worker reported that the children were adjusting well to their foster home environment.

After a hearing on a contested six-month review, the juvenile court terminated reunification services for the mother and father. It found father did not comply with his case plan and mother did not benefit from it. The court scheduled a section 366.26 hearing.

Mother and father did not attend the 366.26 hearing. Social worker Nicole Crosgrove testified the children were "doing very well" in their foster home. The foster parents were the prospective adoptive parents. The children look to them "for guidance, for reassurance, for encouragement." The children "are generally adoptable."

The juvenile court found that the children were adoptable, that adoption is in their best interests, and that the "beneficial relationships" with the parents do not outweigh "the need for the termination of parental rights in this case." It terminated parental rights for mother and father.

## DISCUSSION

### The Finding that the Children Were Adoptable

Mother and father contend HSA did not meet its burden to show that the children were likely to be adopted within a reasonable time. They claim the juvenile court consequently erred by finding the children were adoptable and by terminating their parental rights. We disagree.

"'In order for the court to select and implement adoption as the permanent plan, it must find, by clear and convincing evidence, the minor will likely be adopted if parental rights are terminated.'" (*In re Brandon T.* (2008) 164 Cal.App.4th 1400, 1408.) "The question before the juvenile court [is] whether the child [is] likely to be adopted

4

within a reasonable time, not whether any particular adoptive parents [are] suitable." (*In re Marina S.* (2005) 132 Cal.App.4th 158, 166.)  The juvenile court considers a child's physical and emotional condition in making this determination.  But a "'minor who ordinarily might be considered unadoptable due to age, poor physical health, physical disability, or emotional instability is nonetheless likely to be adopted because a prospective adoptive family has been identified as willing to adopt the child.'" (*Brandon T.*, at p. 1408.)  "We review an order terminating parental rights for substantial evidence." (*Ibid.*)

"In viewing the evidence, we look only to the evidence supporting the prevailing party.  [Citation.]  We discard evidence unfavorable to the prevailing party as not having sufficient verity to be accepted by the trier of fact.  [Citation.]  Where the trial court . . . has drawn reasonable inferences from the evidence, we have no power to draw different inferences, even though different inferences may also be reasonable.  [Citation.] The trier of fact is not required to believe even uncontradicted testimony.  [Citation.]" (*Rodney F. v. Karen M.* (1998) 61 Cal.App.4th 233, 241.)  We do not weigh the evidence or decide credibility issues.

Mother and father note that a court may not find adoptability where the record only contains speculation by a social worker about the children's future prospects. (*In re Asia L.* (2003) 107 Cal.App.4th 498, 511-512.)  But they have not shown that the juvenile court relied on speculation.  As HSA notes, the court had an extensive factual record to support its findings.

Mother and father cite to a portion of Dr. Tina Goodman-Brown's testimony and claim it shows the children will "suffer" and experience "anger" when they discover "they were not raised by their biological parents."  But Brown's testimony on this subject was largely general and she indicated she could not make a specific prediction.  She said, "[A]lmost all adoptive children go through a period of time where they are trying to figure out who I am . . . ."  She added, "[O]ne does not have a crystal ball that can predict all of this."  The credibility of this portion of Brown's testimony was

a matter for the trier of fact. But even so, Brown's ultimate conclusion was that the children should be adopted.

Mother and father point to evidence that they claim is supportive of their position. But the issue on appeal is not whether some evidence supports them, it is only whether substantial evidence supports the judgment.

Mother cites to an HSA report filed August 28, 2013, which indicated that S.R. had some "tantrums" and behavioral problems. But HSA also said this occurred "after visitation services with the parents." The report indicated that S.R. had "no medical issues." S.R. was "working on using words to express her emotions and needs rather than cry or tantrum." HSA noted that the "frequency and degree" of tantrums "have decreased over time." S.R. successfully completed speech therapy services and made such progress that she no longer requires services. Social worker Nicole Crosgrove testified that S.R. received therapy for behavioral issues. The therapist determined the foster parents "have all of the equipment they need in the foster home" to deal with such problems.

HSA correctly notes the record shows the current foster parents have "repeatedly expressed their commitment" to adopt these children. They told HSA they "have accepted the children as their own." HSA determined the foster parents have the "financial capability and the resources" to care for the children. Crosgrove testified the children "are doing very well in that home. . . . They look to the prospective adoptive parents for comfort, for guidance, for reassurance, for encouragement." The evidence is sufficient to support the court's finding on adoptability.

*The Beneficial Relationship Exception*

Mother and father contend the juvenile court erred by ruling the beneficial relationship exception to adoption did not apply, and it consequently erred by terminating their parental rights. They claim they maintained regular visits with the children.

HSA concedes that "they maintained fairly regular contact." But adds the juvenile court could reasonably find that "engaging in parent-like activities during visits is not the equivalent of fulfilling a parental role." We agree.

6

Section 366.26, subdivision (c)(1)(B) requires the juvenile court to terminate parental rights if it finds by clear and convincing evidence that a child is likely to be adopted, unless "[t]he court finds a compelling reason for determining that termination would be detrimental to the child" due to an enumerated statutory exception.

The "beneficial parental relationship" exception of section 366.26, subdivision (c)(1)(B)(i) requires a showing of "'regular visitation and contact with the child and the child would benefit from continuing the relationship.'" (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 229.) "To meet the burden of proof, the parent must show more than frequent and loving contact, an emotional bond with the child, or pleasant visits." (*Ibid.*) The parent must establish the existence of a relationship that promotes the child's well-being to such a degree as to outweigh the well-being the child would gain in a permanent home with adoptive parents. (*In re Jason J.* (2009) 175 Cal.App.4th 922, 936.) Only in the "extraordinary case" can a parent establish the exception because the permanent plan hearing occurs after the court has repeatedly found the parent unable to meet the child's needs. (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1350.)

The exception requires proof of "a *parental* relationship," not merely a relationship that is "beneficial to some degree but does not meet the child's need for a parent." (*In re Jasmine D.*, *supra*, 78 Cal.App.4th at p. 1350.) The existence of a beneficial relationship is determined by the age of the child, the portion of the child's life spent in parental custody, the quality of interaction between parent and child, and the child's particular needs, among other factors. (*In re C.B.* (2010) 190 Cal.App.4th 102, 124; *In re Amber M.* (2002) 103 Cal.App.4th 681, 689 [beneficial relationship may exist when children were in mother's care the majority of their lives].)

Historically, courts have applied the substantial evidence standard of review. (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575-576.) The case of *In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314-1315, applied the substantial evidence standard to the trial court's determination whether a beneficial relationship exists, and the abuse of discretion standard to the court's determination whether the relationship is so

7

important that it compels a plan other than adoption. Here we affirm under either standard.

Father contends the children would benefit from continuing the relationship with him. But HSA cites evidence from which the juvenile court could reasonably draw inferences against father. An HSA social worker observed his conduct. She said during "visitation services, the father . . . failed to engage with the children or demonstrate an ability to provide appropriate care." He had "little interaction with the children, spending the majority of visitation time sitting on the couch." He did not "intervene" when the children were "misbehaving."

A therapist from the Ventura County Behavioral Health Agency said that S.R. had stated that she did not like her father. After visits with him she became "dis-regulated, hyperactive" and physically aggressive. The therapist said the visits with father had a "detrimental impact" on S.R.

Mother and father suggest there was a strong bond between them and their children. But the juvenile court could reasonably draw a different inference from the testimony of the social worker who observed the children during visits. Crosgrove said the children did not view them as their parents. They called their foster parents "momma and daddy," and they referred to mother and father by their first names. When the visits ended, the children had no difficulty "separating from" the biological parents. They did not respond to "affection" initiated by mother. They did not "hug" her. Crosgrove testified the children responded more responsively to their foster parents. She said they "always are interacting with" them.

Mother and father claim it is in the children's best interests to be reunited with them. But during the period they had custody, the children were subjected to an environment of abuse, neglect and exposed to the danger of illegal drugs. By contrast, HSA said the foster parents took responsibility to properly care for the children and had the resources to do so. The children were comfortable and safe in that environment. Dr. Brown said, "The children need to be adopted." She added, "The children's welfare outweighs the harm caused by terminating the parental rights."

8

Father claims the juvenile court erred by not selecting the alternative of a legal guardianship. But "[a]s a matter of public policy, the juvenile court gives first priority to adoption as the most desirable permanent plan." (*In re Edward R.* (1993) 12 Cal.App.4th 116, 122.) Moreover, father has not shown any abuse of discretion. The court could reasonably find the evidence shows adoption is in the children's best interest.

Mother and father have not shown a lack of substantial evidence to support the juvenile court's findings. We have reviewed their remaining contentions, and we conclude they have not shown error.

The orders (judgments) are affirmed.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


YEGAN, J.


PERREN, J.

9

Ellen Gay Conroy, Judge

Superior Court County of Ventura
_____


Patti L. Dikes, under appointment by the Court of Appeal, for Defendant and Appellant A.V.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant M.R.

Leroy Smith, County Counsel, Cynthia Krause, Assistant County Counsel, for Plaintiff and Respondent.