Filed 4/30/25  P. v. Williams CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>DARRELL LEE WILLIAMS,<br><br>　　　Defendant and Appellant. | B336916<br><br>(Los Angeles County<br>　Super. Ct. No. GA088486) |

APPEAL from an order of the Superior Court of Los Angeles County, Dorothy L. Shubin, Judge. Affirmed.

Brad J. Poore, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Michael C. Keller and John Yang, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Darrell Lee Williams appeals from the denial of his petition for resentencing under former Penal Code section 1170.95 (now section 1172.6).[1] The trial court found Williams was ineligible for relief as a matter of law because he was the actual killer. Williams primarily contends that "[e]ven assuming, *arguendo*, that appellant was the actual perpetrator, . . . the denial of the petition at the prima facie stage of proceedings was error" because the court did not consider "youth-related mitigating factors" in assessing whether he made a prima facie showing for relief. We disagree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Charges and Conviction[2]

In December 2012, a Pasadena Police Department officer and Federal Bureau of Investigation special agent were on patrol in an unmarked police car in Pasadena. The officers saw a Dodge Durango that matched the description of a vehicle connected with a shooting that occurred earlier in the area.

Williams was driving the Durango and had three passengers.[3] When Williams committed a traffic code violation,

---

[1] All subsequent statutory references are to the Penal Code. Effective June 30, 2022, the Legislature renumbered section 1170.95 to section 1172.6. (Stats. 2022, ch. 58, § 10.) There were no substantive changes to the statute. All further references to the statute will be to the new section number.

[2] We have taken judicial notice of the record from Williams's direct appeal, *People v. Williams* (Oct. 19, 2017, B271591 [nonpub. opn.]). The following facts are taken from the opinion of the direct appeal. We do not rely on the facts in resolving this appeal.

[3] It was later determined that neither Williams nor his passengers were involved in the shooting from earlier in the day.

the officers activated blue and red police lights. They saw a passenger furtively reach down towards the floorboards and up towards the driver's area, which concerned them. When the Durango stopped, the officers exited their vehicle with their weapons drawn, announced they were police, and directed Williams and the passengers to show their hands. Williams drove away at a high speed. The officers returned to their vehicle and followed with police lights and sirens activated. Williams drove 85 miles per hour in an area where the speed limit was 35 miles per hour. Passengers in the Durango told Williams to stop or slow down.

Kenric Ng was stopped at an intersection, waiting to turn left, when Willams's Durango came racing towards his minivan. Williams applied the brakes but did not stop in time to avoid running a red light and colliding with the minivan. The minivan slammed into a pole. The impact caused the death of two minivan passengers and serious injuries to the driver and two other passengers.

A handgun was found on a street where the pursuit occurred. It bore markings indicating it was thrown from the Durango during the pursuit.

Williams was charged by amended information with two counts of murder (§ 187, subd. (a)), five counts of assault with a deadly weapon (§ 245, subd. (a)(1)), and one count of possession of a firearm by a felon (§ 29800, subd. (a)(1)). It was further alleged as to each count of assault with a deadly weapon that Williams personally inflicted great bodily injury on each victim.

The jury was instructed on murder with malice aforethought (CALCRIM No. 520) and the lesser included offenses of heat of passion voluntary manslaughter (CALCRIM

No. 570) and involuntary manslaughter (CALCRIM No. 580). The jury was not instructed on any theory of accomplice or aider and abettor liability.

The jury convicted Williams of two counts of voluntary manslaughter and five counts of assault with a deadly weapon. On the assault with a deadly weapon counts, the jury found true that Williams personally inflicted great bodily injury on each victim, including the two victims that died. He was found not guilty of possession of a firearm by a felon.

The trial court sentenced Williams to a term of 30 years to life for the first voluntary manslaughter count, which included a five-year enhancement for a prior serious felony conviction. He was sentenced to 25 years to life for the second voluntary manslaughter count and 25 years to life for the five counts of assault with a deadly weapon, each to run concurrently. The two assault with a deadly weapon convictions related to the victims that died were stayed under section 654 as arising from the same act for which Williams was convicted of voluntary manslaughter. The judgment was affirmed on direct appeal.

## B.    Petition for Resentencing

In 2023, Williams filed a petition for resentencing pursuant to section 1172.6. The People opposed the petition, and Williams's court appointed counsel filed a reply.

The trial court denied the petition, finding Williams ineligible for relief as a matter of law. The court reasoned, "The entire theory and presentation of the case was as Mr. Williams as the only perpetrator and the actual perpetrator, and there was no instruction as to aiding, abetting, and any suggestion that he was

4

anything other than the actual perpetrator." Williams timely appealed.

## DISCUSSION

### A.    Governing Law and Standard of Review

The Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) (SB 1437) "'to more equitably sentence offenders in accordance with their involvement in homicides.'" (*People v. Curiel* (2023) 15 Cal.5th 433, 448.)  SB 1437 "amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (*Ibid.*, quoting Stats. 2018, ch. 1015, § 1, subd. (f).)  Under this framework, a "person's culpability for murder must be premised upon that person's own actions and subjective mens rea." (Stats. 2018, ch. 1015, § 1, subd. (g).)

SB 1437 also added now section 1172.6 to provide "a procedural mechanism for defendants who could not be convicted of murder under the amended laws to seek retroactive relief." (*People v. Rodriguez* (2024) 103 Cal.App.5th 451, 457.)  Effective January 1, 2022, Senate Bill No. 775 (2021–2022 Reg. Sess.) amended section 1172.6 to "'clarif[y]' that 'persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural [and] probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories.'" (*People v. Saibu* (2022) 81 Cal.App.5th 709, 747.)

5

If a petitioner makes a prima facie showing for relief, the trial court must issue an order to show cause for an evidentiary hearing. (*People v. Hurtado* (2023) 89 Cal.App.5th 887, 891; § 1172.6, subds. (c), (d).) However, if the petition and record in the case establish conclusively the defendant is ineligible for relief as a matter of law, the court may deny the petition. (*People v. Strong* (2022) 13 Cal.5th 698, 708 (*Strong*); *People v. Harden* (2022) 81 Cal.App.5th 45, 52 (*Harden*).)

We review de novo the trial court's denial of a section 1172.6 petition at the prima facie stage. (*People v. Coley* (2022) 77 Cal.App.5th 539, 545.)

**B.** **Williams is Ineligible for Relief Under Section 1172.6 as a Matter of Law**

Williams argues that even if he was the actual killer, the trial court erred by denying his section 1172.6 petition at the prima facie stage without considering whether "youth-related mitigating factors" preclude a finding that he "acted with conscious disregard for human life," which he asserts undercuts his conviction for voluntary manslaughter.[4] We reject Williams's contention.

Williams is incorrect that actual killers are entitled to resentencing relief under section 1172.6. Through SB 1437, the legislature eliminated murder liability for those "who were

---

[4] Williams acknowledges his counsel did not raise this argument in the trial court. (See *People v. Partida* (2005) 37 Cal.4th 428, 435 ["A party cannot argue the court erred in failing to conduct an analysis it was not asked to conduct"].) However, the People do not argue Williams forfeited the argument by not raising it. We exercise our discretion to consider the argument in determining whether the court erred by denying the petition.

6

neither the actual killers nor intended to kill anyone." (*Strong, supra*, 13 Cal.5th at p. 707.) "As a matter of law, resentencing relief under section 1172.6 is not available to an 'actual killer.'" (*People v. Garcia* (2022) 82 Cal.App.5th 956, 973 (*Garcia*); *People v. Delgadillo* (2022) 14 Cal.5th 216, 233 (*Delgadillo*) [petitioner "not entitled to any relief under section 1172.6" because he "was the actual killer and the only participant in the killing"].)

Here, the record of conviction conclusively establishes that Williams was prosecuted and convicted of voluntary manslaughter as the actual killer. The prosecution tried the case exclusively on the theory that Williams was the sole and direct perpetrator. The evidence at trial focused on Williams being the driver of the Durango, fleeing from the officers, and colliding with the victims' minivan at high speed. Moreover, defense counsel stipulated Williams was the driver. During closing argument, there was no dispute that Williams was the direct perpetrator of the offenses and caused the collision that killed the two victims.

Consistent with the theory that Williams was the actual killer, the jury was instructed on murder with malice aforethought and the lesser included offenses of voluntary and involuntary manslaughter. The jury was not instructed on the felony murder or natural and probable consequences doctrine, accomplice liability, aiding and abetting, or any theory of imputed malice. Further, the jury found that Williams personally inflicted great bodily injury on the victims. Consequently, the jury could only have convicted Williams of being the actual killer, making him ineligible for section 1172.6 relief as a matter of law. (*Garcia, supra*, 82 Cal.App.5th at p. 973; see *Harden, supra*, 81 Cal.App.5th at p. 52 ["if the record shows that the jury was not instructed on either the natural and

7

probable consequences or felony-murder doctrines, then the petitioner is ineligible for relief as a matter of law"].)

Indeed, Williams does not deny he was the actual killer. Instead, he argues the trial court erred by failing to consider youth-related mitigating factors in denying his petition. He asserts that case law concerning implied malice murder with regard to youthful defendants has evolved since he was convicted, and a factfinder is now required to consider youth in assessing whether a defendant formed the requisite mental state for second degree murder. He contends that as a result, he is entitled to an evidentiary hearing for the trial court to consider how youth-related mitigating factors impacted his ability to form the requisite mens rea for implied malice.

Williams's claim rests on the premise that the jury convicted him of second degree implied malice murder after finding he acted with conscious disregard for human life. However, this is incorrect. The jury convicted Williams of voluntary manslaughter, not second degree implied malice murder. They found that he acted without malice when he killed two people. (§ 192, subd. (a) ["Manslaughter is the unlawful killing of a human being without malice"]; see *People v. Milward* (2011) 52 Cal.4th 580, 587 ["Malice is negated when the defendant kills as a result of provocation . . ."].) As his conviction was not based upon a finding of malice, implied or otherwise, there is no such finding to be revisited. Williams was the actual killer and is ineligible for relief under section 1172.6.

Finally, Williams argues the denial of his petition at the prima facie stage violated his right to equal protection under the federal and state Constitutions. He argues that as a petitioner convicted of implied malice murder, he has been treated more

8

harshly than a petitioner convicted of felony murder with a special circumstance finding that the petitioner was a major participant who acted with reckless indifference for human life, as the latter would be granted relief under section 1172.6.  Again, Williams was not convicted of implied malice murder; he was convicted of manslaughter as the actual killer.  There is no factual basis for his equal protection claim, and thus, we reject it.[5]  (See *In re Edward R.* (1993) 12 Cal.App.4th 116, 124 [because underlying premise of unequal treatment was absent, the issues of similarly situated classes and rational basis versus strict scrutiny analysis were moot].)

---

[5]    Williams also asserts his trial counsel was prejudicially ineffective by failing to object to the trial court's failure to consider whether youth-related mitigating factors undercut Williams's conviction for voluntary manslaughter.  However, there is no constitutional right to effective assistance of counsel in postconviction proceedings or proceedings to obtain collateral relief from a judgment of conviction.  (*Delgadillo*, *supra*, 14 Cal.5th at pp. 226–227.)  Even if there were, the record of conviction reflects that Williams was ineligible for relief under section 1172.6 as a matter of law, and an attorney is not ineffective for failing to raise meritless objections.  (*People v. Lucero* (2000) 23 Cal.4th 692, 732.)

## DISPOSITION

The order is affirmed.

MORI, J.

We concur:

ZUKIN, Acting P. J.

DAUM, J. **

** Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to Article VI, section 6, of the California Constitution.

10